

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THOMAS SIMPSON,         )
                        )
        Plaintiff,      )
                        )
    v.                  )    No. 03 C 7173
                        )    Paul E. Plunkett, Senior Judge
MURRAY'S DISCOUNT AUTO, )
                        )
        Defendant.      )

## MEMORANDUM OPINION AND ORDER

Thomas Simpson ("Plaintiff") has sued Murray's Discount Auto ("Murray's" or "Defendant") for its alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981. Simpson, who is African American, claims he was terminated for dating another employee while white employees who also dated coworkers were not punished. The case is before the Court on Defendant's Federal Rule of Civil Procedure 56(c) motion for summary judgment.[1] Because Simpson has failed to establish a prima facie case, the motion is granted.

### Facts

Simpson began working for Murray's, in March 2002. (Pl.'s L.R. 56.1 Stmt. ¶ 1; Def.'s L.R.

---

[1] Plaintiff has filed a motion to strike certain evidence offered in support of Defendant's motion for summary judgment, charging that the evidence is inadmissible, and that certain facts claimed as "undisputed" by Defendant were not stipulated to by Plaintiff. Because we did not rely on that evidence in deciding the motion for summary judgment, and because Plaintiff had the opportunity to respond to Defendant's statement of facts, Plaintiff's motion to strike is denied as moot. Defendant has filed a motion to strike portions of Plaintiff's affidavit. Because we did not rely on the disputed portions in deciding the motion for summary judgment, Defendant's motion to strike is denied as moot.

56.1 Stmt. ¶ 7.) He was hired as a sales manager and placed in a store in Chicago. (Def.'s L.R. 56.1 Stmt. ¶ 7.) While at that store, he supervised Comanica Singleton, a parts clerk. (*Id.* ¶ 18.)

On July 23, 2003, Singleton was fired for poor job performance. (*Id.* ¶ 19.) According to Simpson, Singleton blamed him for her termination. (Pl.'s L.R. 56.1 Stmt. ¶ 8.) Hours after she was fired, Singleton contacted Clifton Hansen, a loss prevention employee for Murray's. (*Id.* ¶ 9.) Hansen and Denise Gray, another loss prevention employee, then contacted Simpson. (*Id.* ¶ 11.) They questioned Simpson about allegations Singleton had made, accusing him of sending her a love letter, a card that read in part, "I won't pretend to have all the answers for you my friend, but I'll be thinking of you, loving you and praying that Jesus will help you bear this difficult time and rise to a brighter tomorrow," and photographs of a man's genitalia. (*Id.* ¶¶ 10, 11; Def.'s L.R. 56.1 Stmt. ¶ 28.) All of these events allegedly occurred during the brief period Simpson was transferred to another store. (Pl.'s L.R. 56.1 Stmt. ¶ 12.) He denied sending the love letter, but did fill out a human resources form that explained that the "letter" was nothing more than lyrics to a song he was listening to on the radio. (Def.'s L.R. 56.1 Stmt. ¶ 40; Simpson Dep., Ex. 9.) He admitted he sent the card, but explained he had sent it to Singleton to help her through a difficult time, something he had done at past jobs for male and female employees. (Def.'s L.R. 56.1 Stmt. ¶ 56; Simpson Dep. 124–27.) Simpson denied he sent the photographs, pointing out that the skin in the photos was much lighter than his. (Simpson Dep. 133.) Simpson was told he was being suspended pending further investigation of Singleton's allegations. (Pl.'s L.R. 56.1 Stmt. ¶ 12.)

On January 28, 2003, Simpson was called back into Hansen's office. (*Id.* ¶ 13.) Hansen played tape recordings of phone calls between Simpson and Singleton. (*Id.*) Simpson maintained that he and Singleton had a friendship, and the phone calls were welcome. (*Id.*) Soon thereafter,

Simpson was terminated. (*Id.* ¶ 14.) According to Simpson, he was originally told he was being investigated for dating another employee. (*Id.* ¶ 13.) He does admit, however, that Hansen told him he was being fired for sexual harassment. (Def.'s L.R. 56.1 Stmt. ¶ 53.)

## The Legal Standard

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

## Discussion

Title VII prohibits employment discrimination on the basis of race, color, religion, sex or national origin. 42 U.S.C. § 2000e-2. Section 1981 prohibits racial discrimination in the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981 (a)-(b). "While section 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical." *Von Zuckerstein v. Argonne Nat'l Lab.*, 984 F.2d 1467, 1472 (7th Cir. 1993).

Having no direct evidence of discrimination, Simpson must comply with the indirect, burden-shifting method of proof articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), if he is to defeat this motion. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 982 (7th Cir. 1999). Under that method, Simpson must first establish a prima facie case of discrimination. *Id.* If he does so, the burden of production shifts to Murray's to articulate a legitimate, nondiscriminatory reason for the challenged employment decision. *Id.* If Murray's carries its burden, Simpson must show that the proffered reason for the employment decision is merely a pretext. *Id.*

To establish a prima facie case on his discrimination claims, Simpson must show that: (1) he is a member of a protected class; (2) he was meeting Murray's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees were treated differently. *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, (7th Cir. 2004). There is no argument Simpson is a member of a protected class and that his termination constitutes an adverse action. However, Murray's contends that Simpson did not meet its legitimate expectations and has failed to demonstrate that any other similarly situated employees were treated more favorably.

Murray's argues that Simpson did not meet its expectations because he was sexually harassing a coworker by sending her a love letter, a card, and pornographic photographs. Simpson argues that other Murray's employees who were not black engaged in romantic behavior in the workplace but were not fired. In limited circumstances, where "the issue is whether the plaintiff was singled out for discipline based on a prohibited factor, it 'makes little sense . . . to discuss whether she was meeting her employer's reasonable expectations,'" and the plaintiff need not address the second prong of the *McDonnell* test to establish a prima facie case. *Curry v. Menard, Inc.*, 270 F.3d

473, 477–78 (7th Cir. 2001) (quoting *Flores v. Preferred Technical Group*, 182 F.3d 512, 515 (7th Cir. 1999)); *see also Brummett v. Lee Enter., Inc.*, 284 F.3d 742, 745 (7th Cir. 2002) (if legitimate expectations are themselves pretextual, the prima facie case is subsumed into the question of pretext). Normally, under circumstances like these, we would explore this issue when we reached the discussion of pretext. However, in this case we will not travel quite that far, as Simpson cannot establish a prima facie case.

Simpson's cause fails because he cannot point to any similarly situated employees who were treated differently than Simpson. Employees are situated similarly only if they "dealt with the same supervisor, were subject to the same standards, and . . . engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or [defendant's] treatment of them." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617–18 (7th Cir. 2000). The employees must be similar in all material respects. *Id.* at 617.

In Simpson's view, "similarly situated" employees are those who have engaged in romantic conduct in the workplace. With this view in mind, he describes several office romances involving white employees that did not result in termination. According to Simpson's deposition testimony, Jessica Evensen, a human resources employee, married an assistant manager. (Simpson Dep. 168–74.) Doug Leahy and a female employee dated and eventually married while both were employed by Murray's, and an employee named "Dan" dated a coworker without facing any punishment. (*Id.*)

Simpson supplies us with very little information about these fellow employees. None appear to have been sales managers, and we do not know whether any dealt with the same supervisor. Shining the most flattering light possible upon the record to aid Simpson, he engaged in similar

conduct as these white Murray's employees. He flirted with a coworker, and tried to support her during a difficult time. Though Simpson's relationship with Singleton never blossomed into a successful relationship like those of Evensen, Leahy and Dan, this difference is not material. The difference that is fatal to Simpson's claim is that none of the other employees were accused of improper conduct by the objects of their affections. Simpson was not fired for having a romantic relationship with a co-worker. He was fired because Murray's received a complaint and found that he had acted inappropriately with that co-worker. Accusations were made against Simpson, an investigation was launched, and he was terminated. Simpson has not alleged that other employees were accused of similar conduct and were not investigated or punished. Summary judgment is therefore appropriate.

## Conclusion

Based on the foregoing, Defendant's motion for summary judgment is granted. Plaintiff's case is dismissed with prejudice. This is a final and appealable order.

**ENTER:**

_(signature)_

**UNITED STATES DISTRICT JUDGE
PAUL E. PLUNKETT**

DATED: MAR 3 2005